UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

WEST AMERICA INSURANCE
COMPANY, a foreign
corporation; THE OHIO
CASUALTY INSURANCE COMPANY, a
foreign corporation,

               Plaintiffs,

         v.

GILBERT H. MOEN COMPANY,
INC., a Washington
corporation; PROSSER PUBLIC
HOSPITAL DISTRICT OF BENTON
COUNTY, WASHINGTON, a
municipal corporation, under
the laws of the State of
Washington; THE WASHINGTON
INSURANCE GUARANTEE
ASSOCIATION, a non-profit,
unincorporated legal entity
created by the laws of the
State of Washington,

               Defendant.

NO. CV-03-3029-EFS

**ORDER GRANTING PROSSER'S
PARTIAL MOTION FOR SUMMARY
JUDGMENT AND DENYING IN PART &
HOLDING IN ABEYANCE IN PART
WIGA'S MOTION FOR SUMMARY
JUDGMENT**

A hearing was held in the above-captioned matter on July 20, 2004. Edward Coulson appeared on behalf of Prosser Memorial Hospital, and Lawrence Gottlieb represented Washington Insurance Guarantee Association. Before the Court were Prosser's Motion For Partial Summary Judgment (Ct. Rec. 38) and Washington Insurance Guaranty Association's (WIGA) Motion

ORDER ~ 1

For Summary Judgment of Dismissal (Ct. Rec. 30).  After hearing oral argument and reviewing the submitted materials and relevant legal authority, the Court is fully informed and grants Prosser's motion, finding that the "known loss" doctrine applies, and denies in part and holds in abeyance in part WIGA's motion, due to the application of the "known loss" doctrine and reserves ruling on the issue relating to attorney's fees.

## STATEMENT OF FACTS[1]

In 1993, the City of Prosser (Prosser) hired Gilbert H. Moen Company, Inc. (Moen) to remodel Prosser Memorial Hospital.  In December 1997, Prosser and Moen were about to arbitrate a series of disputes regarding Moen's and its subcontractors' work at the hospital.  On December 12, 1997, Prosser notified Moen in a letter there was a "very serious problem" with Moen's stucco application work failing.  Moen contested Prosser's claims for stucco damages.  Prosser and Moen agreed to reserve Prosser's stucco claims for later resolution.  And the March 27, 1998, arbitration award specifically stated, "by agreement of Moen and [Prosser], all claims of [Prosser] as against Moen only related to

---

[1] In ruling on a motion for summary judgment, the Court considered the facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, and exhibits, in the light most favorable to the party opposing the motion.  *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1972) (*per curiam*).  The following factual recitation was created utilizing this standard.

problems with stucco/exterior are specifically reserved and not decided by virtue of this Award.

On January 21, 1998, Moen tendered Prosser's claim related to the stucco to its insurer Reliance Insurance Company.  On June 16, 1998, counsel for Moen notified Prosser's counsel that Moen personnel were willing to meet with Prosser personnel to discuss the claims for stucco damage, but that Moen was not waiving any defenses to Prosser's claims. On October 3, 2001, Reliance was declared insolvent pursuant to a Pennsylvania state court order; this order triggered the activity of the Washington Insurance Guaranty Association.

In March 2002, Prosser filed a lawsuit in Benton County Superior Court against Moen based on the claims of stucco damage.  Moen, which also had insurance policies with Ohio Casualty Group ("Ohio Casualty"), tendered Prosser's claims to Ohio Casualty.  Ohio Casualty acknowledged receipt of such claims in June 2002.

Ohio Casualty filed the instant lawsuit in June 2003 to obtain, in part, a declaratory judgment that Ohio Casualty owed no coverage for Prosser's claims of stucco damage against Moen.  On August 7, 2003, counsel for Ohio Casualty wrote Moen a letter in contemplation of the upcoming mediation in the lawsuit filed by Prosser against Moen, which notified Moen that Ohio Casualty was defending Moen under a full reservation of rights.  WIGA was notified of the mediation by Moen and refused to participate.

On November 26, 2003, Prosser, Moen, and Ohio Casualty executed a written Settlement Agreement, pursuant to which Prosser agreed to dismiss its lawsuit against Moen and Ohio Casualty agreed to pay $107,500 to

Prosser on behalf of Moen and Moen agreed to pay Prosser $30,000.  Moen also stipulated to a judgment against it for $1,500,000.  Pursuant to paragraph 4 of the Settlement Agreement, Moen and Ohio Casualty assigned their rights regarding Prosser's stucco claims and WIGA to Prosser.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986).  The party seeking summary judgment must demonstrate there is an absence of disputed issues of material fact to be entitled to judgment as a matter of law.  FED. R. CIV. PROC. 56(c).  In other words, the moving party has the burden of showing no reasonable trier of fact could find other than for the moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth."  *Lynn v. Sheet Metal Worker's Intern. Ass'n*, 804 F.2d 1472, 1483 (9th Cir. 1986) (quoting *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1306 (9th Cir. 1982).  The court is to view the facts and draw inferences in the manner most favorable to the non-moving party.  *Anderson*, 477 U.S. at 255; *Chaffin v. United States*, 176 F.3d 1208, 1213 (9th Cir. 1999).

A burden is also on the party opposing summary judgment to provide sufficient evidence supporting his claims to establish a genuine issue of material fact for trial.  *Anderson*, 477 U.S. at 252; *Chaffin*, 186 F.3d at 1213.  "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence

tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252).

## PROSSER'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: EXHAUSTION UNDER R.C.W. § 48.32.100

The issue raised by Prosser's motion is whether Moen exhausted its rights under the Ohio Casualty policies as required by R.C.W. § 48.32.100.  Prosser argues Moen had no rights under the Ohio Casualty policies to exhaust because of the "known loss" doctrine and the policy provision embodying it applied to exclude coverage for Prosser's claims for stucco damage.  It also argues the language of the statute does not apply to it nor is there any evidence that it had insurance to exhaust.  WIGA opposes the motion, pointing out that the issue generally, and in particular on this record, is one for the trier of fact and asks the Court to deny Prosser's motion.  In particular, WIGA points out the fact that Ohio Casualty paid over $100,000 creates an inference that Moen must have had some right to coverage for Prosser's claims at least creating an issue of fact requiring denial of Prosser's motion and also both Moen and Prosser failed to exhaust these rights under those policies by settling for far less than policy limits which under Washington case law precludes any recovery against WIGA. (Ct. Rec. 44.)

The Court now turns to the provisions of the Washington Insurance Guaranty Act.  The purpose of the Act is "to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the

ORDER ~ 5

detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers. R.C.W. § 48.32.010. Section 48.32.100 provides:

> (1) Any person having a claim against his insurer under any provision in his insurance policy which is a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of such recovery under the claimant's insurance policy.

A "covered claim" means "an unpaid claim . . . which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer if such insurer becomes an insolvent insurer after the first day of April, 1971 . . . ." *Id.* § 48.32.030(4).

While the parties differ as to the meaning of cases interpreting "exhaustion" requirements and consequences to the claimant when the claimant receives money from a source, it seems that the threshold issue is whether Moen had any right under the Ohio Casualty policy to exhaust. If Moen did not, then extended analysis of the consequences of the settlement for less than limits of the Ohio Casualty policies is unnecessary. Accordingly, the Court must first determine whether there is any genuine issue of material fact that Moen was barred from coverage under the Ohio Casualty policies because of the application of the "known loss" doctrine.

Prosser and WIGA take opposing positions on whether there is a genuine issue of material fact about the applicability of the "known loss" doctrine to the facts of this case. The "known loss" doctrine prevents an insured from collecting "on an insurance claim for a loss that the insured subjectively knew would occur at the time the insurance

ORDER ~ 6

1  was purchased." *Pub. Util. Dist. v. Int'l Ins. Co.,* 124 Wash. 2d 789,

2  805 (1994).  While there are a variety of descriptions as to what the

3  insured must know, generally the standard is whether the insured knew

4  with substantial probability that the loss had occurred or was occurring

5  and that is a question of fact for the jury in the vast majority of

6  cases.  *Hillhaven Props. Ltd. v. Sellen Constr. Co., Inc.,* 133 Wash. 2d

7  751 (1997).  The Washington Supreme Court thoroughly discussed the

8  application of this doctrine in both first and third party cases.

9       In *Hillhaven Properties Ltd.*, the owner of a property became aware

10 of water seepage around the window sills of the newly constructed

11 property, tried to fix the problem but it recurred and then wrote to the

12 construction company notifying it of the problem which attempted to fix

13 it.  *Id.* at 753.  During this period, the property owner obtained

14 insurance coverage with a new insurer without disclosing the history of

15 the problem.  *Id.* at 754.  Eventually the property owner discovered that

16 hidden damage had continued despite the efforts of the contractor and it

17 brought suit against the contractor and others including its own insurer.

18 *Id.* at 755-56. The trial court granted summary judgment to the insurer

19 on the basis of the "known loss" doctrine; the state court of appeals

20 reversed.  *Id.* at 75.  The Washington Supreme Court affirmed the reversal

21 and remanded for trial applying the general rule that whether the insured

22 had knowledge of the substantial probability of the loss is a question

23 of fact for the jury.  The court cited the fact that the letter from the

24 insured property owner to the contractor identifying the problem as it

25 was then known was by itself insufficient to permit application of the

26 "known loss" doctrine as a matter of law when other facts showed that it

ORDER ~ 7

was followed by repairs by the contractor "which seemed to solve the problem" before the Aetna policy took effect and affidavits from the Hillhaven staff indicated that the problem was considered insignificant before the Aetna policy went into effect. *Id.* at 767-68.

The facts here are starkly different. As early as 1997, Prosser and Moen were at odds over a number of construction issues that they agreed would be mediated when Prosser discovered a serious problem with the stucco exterior applied by Moen and its subcontractor. With both parties aware of the stucco issue as mediation loomed, they agreed to continue with mediation of all other construction issues excluding Prosser's claims for stucco damage. (Ct. Rec. 41.) In fact, the mediation award of March 27, 1998, specifically states:

> 8. Reserved claims-stucco exterior: By agreement of Moen and the Hospital, all claims of the Hospital as against Moen only related to problems with the stucco/exterior are specifically reserved and not decided by virtue of this Award.
> 9. Except as specifically set forth in paragraph 8 hereof, this AWARD is in full settlement of all claims arising out of the Projects and submitted to this Arbitration.

(Ct. Rec. 41, Ex. C, pp. 2,3.)

Of additional importance are two letters demonstrating that Moen had substantial knowledge of the stucco damage claim by Prosser as early as late 1997 and the beginning of 1998 before the mediation began. First, Prosser's attorney notified Moen's attorney by letter dated December 13, 1997, of "a very serious problem. [Its hired expert] determined that not only has the stucco application failed, but also that its present condition may present a serious safety risk to the building occupants and visitors." (Ct. Rec. 41, Ex. A.) The letter went on to say, "The purpose of this letter is to advise you of these serious deficiencies .

ORDER ~ 8

. .″ and  extended an invitation to participate in a followup extensive investigation of the extent of the stucco problem which had a rough preliminary repair estimate of more than $400,000.  (Ct. Rec. 41, Ex. A.) Second, sometime prior to January 1, 1998, Moen tendered Prosser's claims for stucco damage to its insurer Reliance.  Reliance acknowledged receipt saying, "You have tendered a claim to Reliance Insurance Company under the policy number QB 1222364, which is effective from January 1, 1997, to January 1, 1998.  The claim is the result of the stucco not adhering to Prosser Memorial General Hospital Building."  (Ct. Rec. 41, Ex. D.) To further contrast this case with *Hillhaven,* here there is no evidence of attempted repairs which might support the notion that Moen thought the stucco problem had been remedied nor are there any affidavits from either Moen or Prosser employees indicating that the stucco problem was considered insignificant before the Ohio Casualty policy went into effect on January 1, 1999.  Finally, *Hillhaven* makes no mention of a policy provision similar to the one contained in the Ohio Casualty policies:

> b.   This insurance applies to . . . "property damage" only if:
>  (3)   Prior to the policy period, no insured . . . knew that the "property damage" had occurred, in whole or in part. If such a listed insured . . . knew, prior to the policy period, that the . . . "property damage" occurred, then any continuation, change or resumption of such "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

(Ct. Rec. 41, Ex. J.)  This Ohio Casualty policy provision bars coverage when the insured has knowledge of "property damage" as Moen did on these facts.

While existence of this knowledge will generally be a question for the trier of fact to resolve, where it is clear that the insured had

ORDER ~ 9

knowledge of property damage triggering its duty of notification of a claim, then summary judgment is appropriate.  For instance, in *Advanced Micro Devices, Inc. v Great American Lines Insurance Co.,* 199 Cal. App. 3d 791 (1988), the "known loss" doctrine was applied to deny coverage where there were engineering reports demonstrating substantial problems existed and there were no attempted repairs prior to the effective date of the new policy.  *See also Larkspur Isle Condo. Owners' Ass'n, Inc. v. Farmers Ins. Group,* 31 Cal. App. 4th 106 (1994).

WIGA makes much of the fact that Prosser seemed to assert "continuing damage" in its complaint to try to obtain coverage under the Ohio Casualty policies and also that Ohio Casualty paid more than $100,000, more than the likely cost of preparing and arguing a summary judgment motion on policy defenses to bar a recovery by Moen.  However, it is futile to speculate about Prosser's motive for including a particular sentence in the complaint where as here it does not explicitly connect it to coverage under the Ohio Casualty policies.  And it is virtually impossible for anyone to divine the reasons why a party decides to settle.  Neither of these points diminishes the support in this record for the Court's ruling that there is no genuine issue of material fact that Moen had substantial knowledge of the existence of Prosser's property damage.  Accordingly, the Court holds the "known loss" doctrine applied and barred coverage under Moen's Ohio Casualty policies for Prosser's claims.  While one might wish that Ohio Casualty had vigorously moved for summary judgment on this issue before entering into a settlement, it is not uncommon for those with a strong legal argument against coverage to settle a claim in order to avoid the expense of

litigating the claim and an appeal and the inherent uncertainty of result. That the issue arises after settlement in the context of Prosser's attempts to recover from WIGA does not alter either the facts or the law applicable to the "known loss" doctrine which the Court has relied on for its decision on this issue.

Prosser's partial motion for summary judgment that on the facts in the record R.C.W. § 48.32.100(1)'s exhaustion requirement does not bar its claim against WIGA is **granted.**

### WIGA'S MOTION FOR SUMMARY JUDGMENT OF DISMISSAL

WIGA asks for dismissal of Prosser's cross claims because WIGA has no obligation to pay any part of its statutory limit of $299,900[2]. The three reasons given for its position are:

(1) Moen failed to exhaust its rights under the policies issued to it by Ohio Casualty between January 1, 1999, and January 1, 2003;[3]

(2) WIGA is entitled to an offset for the amount of the Ohio Casualty policies monies that was not collected by Moen at settlement with Prosser and Ohio Casualty; and

(3) Prosser's cross claims for damages and attorneys fees are barred by statute and Washington case law.

---

[2] WIGA's statutory obligation to pay a covered claim begins at $100 and ends at $299,900. R.C.W. § 48.32.060(1)(a).

[3] Both West American during the years from 1999 to 2002 and Ohio Casualty to January 1, 2003, insured Moen. These policies will be referred to as "Ohio Casualty."

ORDER ~ 11

Prosser responds that Moen's claim for coverage was excluded by the "known loss" doctrine and the "property damage" of the Ohio Casualty policies; Moen has no duty to exhaust that which does not exist. Additionally, Prosser asserts that it is WIGA's burden to show that Moen had a right to recover under those policies, the amount of any offset and thereby establish the absence of a duty to pay its statutory limit.

## A.   Failure to Exhaust and Offset

It is important to give this issue historical context. In March of 2003, Ohio Casualty brought this declaratory judgment lawsuit originally against Moen to determine what, if any, obligations it had under the four policies it issued to Moen between 1994 and 1999. Prosser was a named Defendant in the original Complaint. (Ct. Rec. 1.) Later in 2003, WIGA was added as party in order that any decision would bind it as an interested party. (Ct. Rec. 6; Ct. Rec. 31, pp. 3, 4; Ct. Rec. 32.) At that time, a determination that there was coverage would have been favorable to Moen, Prosser, and WIGA because the limit in each of the four policies was $1,000,000, adequate to cover Prosser's alleged damages and thereby eliminate WIGA's obligation to pay its statutory limits. However, none of the parties filed a summary judgment motion to determine coverage. Sometime thereafter, Prosser, Moen, and Ohio Casualty agreed to mediate and invited WIGA to participate. WIGA declined. The issues among Prosser, Moen, and Ohio Casualty were resolved in a settlement agreement. (Ct. Rec. 41, & Ex. J thereto.) That settlement agreement required Prosser to dismiss its underlying lawsuit against Moen for construction defects in exchange for a stipulated judgment of $1,500,000, an amount based on Prosser's asserted proof of all damages caused by and

related to the construction defects.  Therein, Moen agreed to pay $30,000 and Ohio Casualty agreed to pay $107,500, with a balance remaining on the stipulated judgment of $1,362,500. There is nothing in the record explaining the basis for Moen's payment of $30,000; it could have been some part of a deductible or simply necessary to induce Ohio Casualty to pay anything. Neither is there any explanation for Ohio Casualty's payment of $107,500. As is often true in settlements, the reason why a party contributes money to a settlement is impossible to determine.

Both the "exhaustion" issue and the related "offset" issue are resolved by the Court's above ruling granting Prosser's Partial Motion for Summary Judgment.  The Court held that as a matter of law Moen's claims for coverage under the four Ohio Casualty policies were excluded by application of the "known loss" doctrine and the explicit "property damage" provision of those policies which embodies that doctrine by stating:

> b. This insurance applies to . . . "property damage" only if:
> (3)  Prior to the policy period, no insured . . . knew that the "property damage" had occurred, in whole or in part. If such a listed insured . . . knew, prior to the policy period, that the . . . "property damage" occurred, then any continuation, change or resumption of such "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

(Ct. Rec. 41, Ex. J.)  Thus, this Ohio Casualty policy provision bars coverage when the insured has knowledge of "property damage" as Moen did on these facts.  Correspondingly, Prosser's claims as assignee of Moen against WIGA in the place of the insolvent Reliance are not barred by the "failure to exhaust" and offset terms of R.C.W. § 48.32.100(1).

ORDER ~ 13

Accordingly, the Court denies WIGA's motion for summary judgment seeking dismissal of Prosser's cross-claims for WIGA's statutory funds. While Prosser's claims against WIGA are not barred by the "failure to exhaust" and "offset" terms of R.C.W. § 48.32.100(1), the Court expresses no opinion on the question of the amount of WIGA's potential payment nor of the impact, if any, of the payments by Moen or Ohio Casualty. That remains to be decided after appropriate briefing and a hearing or trial as may be necessary.

**B.   Prosser's Ex-Contractu Damage Claims**

WIGA also asks for dismissal of Prosser's assigned claims for WIGA's bad faith handling of the Moen claim, citing R.C.W. § 48.32.150 and *Vaughn v. Vaughn,* 23 Wash. App. 527 (1979). WIGA interprets § 48.32.150 as granting immunity to WIGA for any action or inaction in handling of this claim.  This section states:

> There shall be no liability on the part of and no cause of action of any nature shall arise against any member insurer, the association or its agents or employees, the board of directors, or the commissioner or his representatives for any action taken by them in the performance of their powers and duties under this chapter.

Other than *WIGA v. Ramsey*, 922 P.2d 237 (Alaska Sup. Ct. 1996), no case has discussed the meaning of this "immunity" statute.

Perhaps the Washington Court of Appeal's lack of discussion of § 48.32.150 in *Vaughn* is attributable to the fact that Ms. Vaughn, having obtained a judgment for her damages, was asserting her bad faith claim against her own insurer for its conduct occurring before its insolvency rather than WIGA's conduct after it appeared in the case. As that court explained: "In January of 1977, plaintiff obtained an ex parte order

ORDER ~ 14

substituting the Association as the (garnishee) defendant in place of Medallion in her suit to establish that Medallion was liable for the entire $30,000 judgment because it had acted in bad faith in handling the tort action." 23 Wash. App. 527, 529. The court in *Vaughn* did observe that WIGA was liable for "covered claims," that is an "unpaid claim. . . . . [w]hich arises out of and is within the coverage of an insurance policy to which (the Act) applies," citing R.C.W. § 48.32.030(4), but noting that a "bad faith" claim is a tort and does not arise from a contract covered by the Act. *Id.* at 530. It then held essentially that WIGA could not be vicariously liable for the tort of an association member, the now insolvent Medallion, citing to *Rivera v. Southern American Fire Insurance Co.*, 361 So. 2d 193 (Fla. App. 1978) (finding a similar state association not liable for "bad faith" damages in excess of the applicable policy limits because the association is not liable for the torts of its members).

The question answered in *Vaughn* is distinct from the question of whether WIGA can be held liable for bad faith in carrying out its statutory obligations to handle covered claims. Section 48.32.150 seems to provide immunity to WIGA "for any action taken by them in the performance of their powers and duties under this chapter" as it so states. However, in *Ramsey,* the Alaska Supreme Court held WIGA could be liable for the breach of its statutory duties in the handling of a covered claim despite the terms of this Washington statute. More recently, the Florida Supreme Court also held that the statutory immunity provision of the Florida Insurance Guaranty Association (FIGA) Act, which is identical to the WIGA Act immunity provision, did not bar lawsuits

against the FIGA for failing to carry out its statutory duties arising out of the handling of a covered claim nor its duties under the contract of the insolvent insurer. *Jones v. Fla. Ins. Guar. Ass'n, Inc.,* 908 So. 2d 435 (Fla. Sup. Ct. 2005).

In *Ramsey,* WIGA was sued in Alaska state court for a violation of its duty to reasonably settle an underlying personal injury action. 922 P.2d 237. The jury awarded Ms. Ramsey $200,000, and that judgment was affirmed. Ms. Ramsey had originally brought suit in Alaska against others for negligence which caused her injuries and damages occurring therein. The Washington state insurer for the Washington defendants became insolvent, and WIGA took over the defense of the case. The parties to the original tort action stipulated to a judgment for Ms. Ramsey against the defendants in the sum of $300,000, the maximum statutory obligation of WIGA, with a no-enforcement provision against the defendants and the assignment to Ms. Ramsey of their claims against WIGA. Though WIGA asserted statutory immunity citing R.C.W. § 48.32.150, the trial, court denied that motion for summary judgment, the case proceeded to trial and the jury found WIGA had unreasonably refused to settle and awarded damages as indicated. *Id.* at 239. On the issue of WIGA's statutory immunity, the Alaska Supreme Court held that WIGA had no immunity for a claim to enforce its statutory duties. *Id.* at 246. It interpreted the statutory immunity language to mean "that WIGA can not be held liable for any actions it takes *in accordance with its duties. The language necessarily implies that WIGA can be held liable for actions it takes which are not within its duties.*" *Id.* at 243 (emphasis added). As one of its duties is to reasonably settle covered claims, it cannot

be immune for its failure to act in accordance with its duty to reasonably settle covered claims arising out of and within the coverage of an insurance policy. *Id.* at 243. The Alaska Supreme Court cited and relied upon the following statement in *Seattle First National Bank v. WIGA,* 116 Wash. 2d 398, 413 (1991):[4] "an action is on a contract if the action arose out of the contract and if the contract is central to the dispute," when it reached the conclusion that "WIGA's statutory duties are derived from the contractual duties assumed by the insurer . . . and makes it likely that the insured can actually sue WIGA in contract." *Id.* at 244. *Ramsey* then should be understood to have held that WIGA is subject to suit and liability for breach of its statutory duties, one of which is to reasonably settle covered claims. Its reasoning is sound and persuasive.

In *Jones,* the Florida Supreme Court analyzed both its cases and those from other jurisdictions on the issue of insurance guaranty association liability for breach of statutory duties. It pointed out that the claimant in *Jones* brought a claim against FIGA for its refusal to satisfy its duty to defend the insured and to indemnify him, duties imposed by both the FIGA Act and the contract of insurance issued by the now insolvent insurer. It stated "the statutory/contractual duty to defend and indemnify claim is totally different from any action for bad faith failure to settle and is cognizable under Florida law. *Id.* at 445.

---

[4] Because the claimant in *Seattle First National Bank* sought to enforce WIGA's statutory obligations, it was not necessary to reach or decide whether a claim in contract could be brought against WIGA.

ORDER ~ 17

It then cited *Ramsey* with approval for its sound reasoning and wisdom and stated that the FIGA Act immunity provision did not defeat Jones' statutory/contractual claims.  It rejected the "total immunity" position advanced by FIGA saying that to adopt that reasoning would permit FIGA:

> to totally ignore the statutory and contractual obligations, to withdraw from representation undertaken by the insurer prior to insolvency, or unilaterally refuse to defend any claim arising after insolvency, with absolutely no legal repercussions or responsibility for its actions or recourse for the insured.  Surely this cannot be the statutory plan.  FIGA could, in its theory, just simply refuse to defend or pay a single claim, with total immunity from legal action. Such an overly broad interpretation of the immunity provision would undermine and emasculate a fundamental canon of statutory construction by effectively negating the balance of the FIGA Act, including the provisions imposing on FIGA the same rights and obligations of the insolvent insurer.

*Id.* at 449. The essential holding of *Jones* is that a claimant with a covered claim can bring an action against FIGA for breach of its statutory or contractual duties under the contract for which the association is deemed the insolvent insurer. *Id.* at 448.

Section 48.32.150, exactly the same as the FIGA Act provision, affords no greater protection or immunity for WIGA.  Like FIGA, WIGA has specific statutory duties in R.C.W. 48.32 *et seq.* and stands in the place of the insolvent insurer with all of its duties under the contract including but not limited to the duty to investigate, *Truck Ins. Exch. v. Century Indem. Co.,* 76 Wash. App. 527, 534 (1995), and the duty to defend, *W. Pac. Ins. Co. v. Farmers Ins. Exch.*, 69 Wash. 2d 11, 18 (1966), and also the duty to reasonably settle the covered claim as *Ramsey* held.  A claimant with a covered claim can bring an action against WIGA for the breach of either or both its statutory duties or duties arising from the insurance contract of the insolvent insurer.  Nothing

1   in *Vaughn* holds otherwise.  Properly understood, *Vaughn* simply holds that
2   no common law tort claim can be brought against WIGA for a bad faith
3   refusal to settle.  It does not bar claims against WIGA for breach of its
4   statutory duties or contractual duties.

5       Accordingly, the Court denies WIGA's motion for summary judgment and
6   holds that WIGA is subject to suit by a claimant with a covered claim for
7   breach of either or both its statutory and contractual duties.

8   **C. Attorney Fees**

9       WIGA asks for dismissal of Prosser's cross claim for attorney fees.
10  Prosser cites to *Olympic Steamship Co., Inc. V. Centennial Ins., Co.* 117
11  Wash. 2d 37 (1991), as authority for its cross claim for attorney fees.
12  WIGA distinguishes *Olympic* arguing that by its very language it applies
13  *only* to *insurers* and WIGA is not an insurer. While accurate, that
14  position is not necessarily persuasive that there is a distinction
15  between WIGA and an *insurer* to pay attorney fees to the insured if "it
16  refuses to defend or pay the justified action or claim of the insured..."
17  *Id.* at 53

18      As to *Seattle First Nat'l Bank v. Washington Ins. Guar. Assn.,* 116
19  Wash. 2d 398 (1991), the two contracts in that case were different; one
20  had a provision for payment of attorney fees and costs incurred in
21  enforcing any obligation under the contract and the other did not. The
22  right to an award of attorney fees in that case arose or did not arise
23  from the contract provision.

24      Neither party has cited to any provision in the Reliance contract
25  that provides for the award of attorney fees and costs incurred in the
26  enforcement of the contract or to any provision that might be

ORDER ~ 19

instructive. Further, *Jones* referred to a provision in Florida law regarding a limitation on recovery of fees against FIGA, but based on FIGA's conduct concluded that Jones was entitled to attorney fees in that case. Because the parties have not had the opportunity to review *Jones* on the issue of attorney fees and then do an analysis of and comparison to Washington case law and R.C.W. § 48.32, the Court reserves ruling on this issue. The parties will file memoranda of no more than 10 pages no later than April 24, 2006, *only* on the issue of attorney fees in light of the Court's rulings on these motions for summary judgment and the *Jones* case with a comparison of the applicable Washington and Florida statutes.

Accordingly, the Court grants Prosser's motion for partial summary judgment and denies in part and holds in abeyance in part WIGA's motion of summary judgment.

For the reasons given above, **IT IS HEREBY ORDERED:**

1. Prosser's Cross Motion For Partial Summary Judgment **(Ct. Rec. 38)** is **GRANTED.**

2. Washington Insurance Guarantee Association's Motion For Summary Judgment of Dismissal **(Ct. Rec. 30)** is **DENIED IN PART** (failure to exhaust and ability to bring claims for both the breach of statutory and contractual duties issues) and **HELD IN ABEYANCE IN PART** (attorneys' fees issue). **The are parties are to file and serve the above-described supplemental briefing regarding the attorneys' fees issue no later than April 24, 2006. The supplemental memoranda may not exceed ten (10) pages each.**

ORDER ~ 20

1    **IT IS SO ORDERED.**   The District Court Executive is directed to

2    (A)   Enter this Order; and

3    (B)   Provide copies to the parties.

4    **DATED** this ___31st___ day of March, 2006.

5

6                         S/ Edward F. Shea
                     _____
7                         EDWARD F. SHEA
                    United States District Judge

8
     Q:\Civil\2003\3029.msj.wpd
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER ~ 21